CHARLES W. CHANDLER *vs.* JOHN P. SQUIRE AND COMPANY.

Suffolk.    December 8, 1910. — April 3, 1911.

Present : KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence.*

In an action for personal injuries alleged to have been caused by the negligence of the servants of the defendant, it appeared that the plaintiff, together with a helper, was sent by his employer to take out an old metal shaft in the place of business of the defendant and to install a new one in its stead, that when the plaintiff was engaged in taking out the old shaft, which weighed eight hundred pounds, there were present five or six workmen of the defendant, including a man who was described as a foreman of the machine shop, and it could have been found that they were there by the direction or authority of the defendant, that the shaft ran through a hole in a brick wall between the main building and a shed, and, having been detached, had dropped down upon the brick which formed the lower part of the hole in the wall, that in the course of the work it became necessary to tip down the end of the shaft in the main building, that, for this purpose one of the defendant's men gave the order "Now bear down on it," that the plaintiff, who was in the shed with one of the defendant's workmen, did not hear this order, that the plaintiff's helper, who was in the main building with the rest of the defendant's workmen and their foreman and wanted to get out of the way before the shaft was tipped, said "Hold on a minute," that the plaintiff heard him and answered "All right. Here, take this light," and stooped down and passed a light through the hole, that the defendant's men, who it did not appear had heard anything said by the plaintiff, bore down on the shaft as they had been told to do, and that the shaft struck the plaintiff under the arm and forced his arm back against the brick wall, causing the injuries sued for. There was nothing to show that the defendant's men were to wait for an order from the plaintiff before bearing down on the end of the shaft in the main

building. *Held*, that there was no evidence of negligence on the part of the defendant's servants, who in bearing down upon the shaft did only what they were expected to do, there being nothing to show that when the order to bear down was given either he who gave it or those who obeyed it had any reason to anticipate that the plaintiff would put his arm through the hole as he did.

TORT for personal injuries sustained on March 9, 1907, in the manner described in the opinion, when the plaintiff was in the employ of James H. Roberts and Company and had been sent to take out a shaft in the place of business of the defendant at East Cambridge.    Writ dated May 16, 1907.

In the Superior Court the case was tried before *White*, J. The plaintiff at the trial waived all but the first count of his declaration, which alleged that the plaintiff while in the exercise of due care was injured by reason of the negligence of the defendant's servants and agents in causing the shaft to strike him with great force and violence.    At the close of the plaintiff's evidence, which is described in the opinion, the judge ordered a verdict for the defendant, and reported the case for determination by this court, with the stipulation of the parties which is stated in the opinion.

*J. J. Scott*, for the plaintiff.

*W. H. Hitchcock*, (*C. M. Pratt* with him,) for the defendant.

MORTON, J.    The plaintiff's employers, James H. Roberts and Company, contracted with the defendant to take down an old shaft in the defendant's place of business and put up a new one with a new coupling and fit the old coupling to the other end of the new shaft.    The defendant agreed to pay $80 for the job and to do the necessary teaming.    There was nothing in the contract which required it to furnish any labor or appliances. The work was to be done between Saturday night and Monday morning.    The plaintiff received instructions from his superior, and the day before beginning on the work he went to the defendant's place of business and looked the situation over.    The next day he went there with a helper who was in the employ of Roberts and Company, and while engaged in taking down the old shaft received the injuries complained of.    At the close of the plaintiff's evidence the judge directed a verdict for the defendant and reported the case to this court, the parties agreeing that if the ruling was right judgment should be entered on the verdict, otherwise for the plaintiff for $400 and costs.

The shaft to be taken down was about ten feet long and weighed about eight hundred pounds. It ran through a hole in a brick wall and was partly in what is called the main building and partly in a shed. It was connected by a flange coupling in the main building and a clutch coupling in the shed. Five or six of the defendant's men were there, including a man who was described as the foreman of the machine shop. There was also a chain fall belonging to the defendant. It did not appear just how the men came to be there, but we think that it could have been found that they were there by the direction or authority of the defendant. Previously to beginning the work a hole had been bored into the floor overhead in the main building, by one of the defendant's men, to put an eyebolt in for the chain fall. The plaintiff disconnected the shaft in the main building and the chain fall was used to hold up that end of the shaft. The plaintiff then went into the shed with one of the defendant's men and proceeded to pry apart the clutch coupling. When the shaft was detached it dropped down on to the brick which formed the lower part of the hole in the wall. The helper who came with the plaintiff remained in the main building with the other men of the defendant and the foreman. In the course of the work it became necessary to tip down the end of the shaft in the main building. As the shaft dropped down on to the brick on the lower side of the hole, after it was detached, the plaintiff testified that he "heard some one say on the other side, Hold on a minute," and he said, "All right. Here, take the light," and "stooped down and passed the light through the hole, . . . just as I reached through that shaft came up all of a sudden, struck me right under the arm, forced my arm back up against the brick wall." He testified that he heard no one say anything about bearing or pressing down on the shaft. There was testimony tending to show that the words "Hold on a minute" were spoken by the plaintiff's helper who was on the other side of the wall and was the nearest of those on that side of the wall to the plaintiff; and that they were spoken by him not to the plaintiff but to Squire's men, one of whom had given the order "Now bear down on it" [the shaft] and because he, the helper, was in a place of danger from which he wished to get out. The accident happened in

consequence of the defendant's men bearing down on the shaft pursuant to the order aforesaid. The helper testified that he did not hear anything said by the plaintiff about a light, but the evidence would warrant a finding in regard to that matter, if material, in favor of the plaintiff. There was nothing to show that, if anything was said by the plaintiff, it was said so that it could be or was heard by the men at the end of the shaft, or that it was meant to be heard by them. In bearing down upon the shaft the men did only what they were expected to do, and there was nothing to show that when the order was given to bear down either the one who gave it or those who obeyed it had any reason to anticipate that the plaintiff would put his arm through the hole in the wall as he did. Nor was there anything to show that the defendant's men were to wait until ordered to do so by the plaintiff before they bore down on the end of the shaft in the main building. We do not see therefore how it can be said that there was any evidence of negligence on the part of the defendant's servants or agents, even if we assume in the plaintiff's favor, but without so deciding, that if there had been the defendant would have been liable therefor.

In accordance with the agreement the entry must be
*Judgment on the verdict for the defendant.*